IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BILTMORE FOREST BROADCASTING FM, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-316C<br>(Senior Judge James E. Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully submits the following reply to the opposition to our motion to dismiss, or, in the alternative, for summary judgment, filed by plaintiff Biltmore Forest Broadcasting FM, Inc. ("Biltmore").

I. This Court Does Not Possess Jurisdiction To Entertain Biltmore's Claims Because Congress Has Vested Jurisdiction Over Those Claims Exclusively With The United States Court Of Appeals For The District Of Columbia Circuit

Biltmore argues that both this Court and District of Columbia Circuit have "exclusive" jurisdiction over its claims. Pl. Br. 7. Biltmore's argument is incorrect as a matter of law.

Section 402 of Title 47 of the United States Code sets forth specific and comprehensive procedures for administrative and judicial review of final orders of the FCC. The United States Court of Appeals for the Federal Circuit has consistently held that when Congress has set forth a specific and comprehensive administrative and judicial review scheme, this Court's

jurisdiction over the matter, pursuant to the Tucker Act, is preempted. Wilson v. United States, 405 F.3d 1002, 1009 (Fed. Cir. 2005); Folden v. United States, 379 F.3d 1344, 1356-57 (Fed. Cir. 2004); Vereda, Ltda v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001).

In section 402 of title 47 of the United States Code, Congress has set forth a specific and comprehensive administrative and judicial review scheme for challenging the award of station licenses by the FCC. Folden, 379 F.3d at 1356-67 ("[T]he [District of Columbia] Circuit's jurisdiction pursuant to subsection 402(b) is [] exclusive: subsections 402(a) and (b) comprise the entire statutory regime by which parties may obtain judicial review of Commission decisions."). In Folden, the Federal Circuit explicitly rejected the suggestion that this Court may exercise concurrent jurisdiction with the District of Columbia Circuit to entertain claims like those of Biltmore, which fall within the scope of section 402(b). 379 F.3d at 1358. Therefore, any jurisdiction that this Court may have had over this matter pursuant to the Tucker Act is trumped by 47 U.S.C. § 402. Wilson v. United States, 405 F.3d at 1009; Folden, 379 F.3d at 1357; Vereda, 271 F.3d at 1375 (Fed. Cir. 2001).

Biltmore's reliance upon Wisconsin Valley Improvement v. FERC, 226 F.3d 738 (D.C. Cir. 2001); Transamerica Access Policy Study Group v. FERC, 225 F.3d 667 (D.C. Cir. 2000); and Bell

Atlantic Tel. Co. v. FCC, 24 F.3d 1441 (D.C. Cir. 1994), is misplaced. None of those non-precedential cases involved a challenge to an award of a station license by the FCC, and none of those cases involved the issue of whether Congress had set forth a specific and comprehensive administrative and judicial review scheme which trumped this Court's Tucker Act jurisdiction.

Bell Atlantic involved a challenge that the FCC lacked authority to order local telephone exchange companies to permit physical co-location of equipment upon their property upon demand. 24 F.3d at 1444-45. In that case, the court did not hold that this Court possessed jurisdiction to entertain petitioner's takings claims. It merely held that it lacked jurisdiction to review the petitioner's takings claims, and that the petitioner would have to pursue those claims with this Court. Id. at n.1.

In Wisconsin Valley, the petitioner petitioned for review of an order from the Federal Energy Regulatory Commission (FERC) that imposed conditions upon the petitioner's license to operate a hydropower project. 226 F.3d at 740-41. In that case, the District of Columbia Circuit did not hold, as Biltmore suggests, that this Court would possess jurisdiction to entertain the petitioner's takings claim. Id. at 743. Transamerica Access also involved a review of a FERC order, which allegedly imposed requirements on owners of electric transmission lines. Id. at

681-83. Again, contrary to Biltmore's representation, the District of Columbia Circuit did not hold that this Court would have jurisdiction over the petitioner's takings claim. Id.; Pet. Br. 8. Indeed, each court has the obligation to examine its own jurisdiction. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also Son Broadcasting, Inc. v. United States, 42 Fed. Cl. 532, 536 (1998)("Jurisdiction is conferred by Congress, not by defendant's arguments in the district court proceeding and not by the district court's transfer of the case to the Court of Federal Claims.").

Biltmore also relies upon United States v. Winstar Corp., 518 U.S. 839 (1996), and Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000), to support its argument that the Court possesses jurisdiction to entertain its claims. Winstar and Mobil Oil, however, are inapplicable to this case. Both of those cases involved allegations that the Government changed the law in order to avoid its contractual obligations. That is not the situation here, where no law was changed and no actual or implied-in-fact contract exists.

Finally, Biltmore also cites to Cellco Partnership v. United States, 54 Fed. Cl. 260 (2002), in support of its jurisdictional argument. In Folden, the Federal Circuit held that "to the extent [Cellco Partnership] suggests that the Court of Federal Claims may exercise concurrent jurisdiction with the D.C. Circuit

over claims that fall within the scope of subsection 402(b), we reject it." 379 F.3d at 1358. Moreover, the circumstances of this case are quite different from Cellco.

In Cellco, a successful bidder brought suit against the United States, alleging that a contract was created when the FCC accepted its bid, and that the FCC breached this contract when it failed to deliver the licenses in a timely manner. Id. In that case, the United States moved to stay the case while a related case was pending, and this Court denied the motion. Id. Neither the issue of jurisdiction or any of the merits in the case was ever addressed or decided by this Court before the dispute was resolved by the parties. Id. In this case, Biltmore lost the auction and, therefore, is in an entirely different relationship with the United States than the successful bidder in Cellco. Moreover, Biltmore is challenging a license award, a dispute for which the District of Columbia Circuit possesses exclusive jurisdiction. 47 U.S.C. § 402. The plaintiff in Cellco disputed whether the FCC had timely delivered licenses for which it had submitted a deposit to the FCC. 54 Fed. Cl. at 261.

Accordingly, this Court lacks jurisdiction to entertain Biltmore's claims, and its complaint should be dismissed.

## II. The Federal Circuit's Decision In *Folden* Is Binding Upon This Court

Biltmore argues that the District of Columbia Circuit lacks jurisdiction to consider claims against the United States for

money damages in excess of $10,000, and, therefore, this Court must have jurisdiction to entertain its claims that an implied-in-fact contract existed and was breached. Pl. Br. 10-12. The Federal Circuit rejected this precise argument in Folden, holding that the appellants' takings claim and breach of implied-in-fact contract claims were nothing more than attempts to circumvent agency and Federal court procedures, and that the "D.C. Circuit's jurisdiction over claims that fall within subsection 402(b) is exclusive." Folden, 379 F.3d at 1356.

Biltmore argues that Folden is inapplicable because this case involves an auction that was actually conducted, unlike Folden, where a second lottery was cancelled, and the plaintiffs claimed that the FCC was contractually bound to hold a second lottery. Pl. Br. 13. Contrary to Biltmore's argument, this immaterial difference in fact does not render Folden inapplicable.

Indeed, the facts of this case, as we demonstrated in our motion to dismiss, are even stronger in support of dismissal than those in Folden. The question in Folden was whether 47 U.S.C. § 402(b) applied to plaintiffs' claims because jurisdiction to entertain claims brought pursuant to 47 U.S.C. § 402(b) lay exclusively with the District of Columbia Circuit. 379 F.3d at 1359. In this case, Biltmore directly challenges an order of the FCC denying its application for a station license. That fits

squarely within 47 U.S.C. § 402(b)(1). The court in Folden unambiguously held that the District of Columbia Circuit possesses exclusive jurisdiction to entertain claims arising under section 402(b), and that any Tucker Act jurisdiction was preempted. Id. at 1357-58. Accordingly, Biltmore's complaint should be dismissed for lack of subject matter jurisdiction.

III. The United States Court Of Appeals For The District Of Columbia Circuit Held That The Government Complied With the Terms Of The Auction And Biltmore Is Barred By The Doctrine Of Collateral Estoppel From Arguing Otherwise

Biltmore argues that the Government "must be held to the terms of [the auction]." Pl. Br. at 6. However, this issue was already decided by the District of Columbia Circuit, and that court held that the Government complied with the terms of the auction and FCC regulations.

In Biltmore Forest Broadcasting FM, Inc. v. Federal Communications Commission, 321 F.3d 155 (D.C. Cir. 2003), Biltmore argued, as it does in this case, that the Government should have disqualified the winning bidder, Liberty, because it did not adhere to the auction rules. The District of Columbia Circuit affirmed the FCC's award of the license to Liberty, and held that the FCC did not act unreasonably in deciding that its regulations did not require Liberty's application to be dismissed for its failure to timely file a family media certification. Id. at 159-61. Therefore, the issue of whether the Government complied with the terms of the auction has already been decided,

and Biltmore is collaterally estopped from arguing otherwise. Bingaman v. Dep't of Treasury, 127 F.3d 1431, 1436-37 (Fed. Cir. 1997).

Moreover, this Court lacks jurisdiction to review whether the Government complied with the terms of the auction. See 47 U.S.C. § 402; see Folden, 379 F.3d at 1353 (holding that review of FCC lottery awards is exclusive to the District of Columbia Circuit). Congress has explicitly vested exclusive jurisdiction over this issue with the District of Columbia Circuit. Id. Accordingly, Biltmore's complaint should be dismissed for lack of subject matter jurisdiction, or, in the alternative, judgment should be entered for the United States as a matter of law.

IV. Biltmore Does Not Have An Implied-In-Fact Contract With The United States That Could Have Been Breached

To recover for a breach of contract, Biltmore must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). "An implied-in-fact contract is an agreement 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances their tacit understanding.'" Folden v. United States, 56 Fed.Cl. 43, 52 (2003)(quoting Trauma Serv., Group v. United States, 104

F.3d 1321, 1326 (Fed. Cir. 1997)(internal citations omitted)). To establish the existence of an implied-in-fact contract, one must establish mutuality of intent to contract; consideration; lack of ambiguity in offer and acceptance; and authority to bind the Government. Folden, 56 Fed. Cl. at 52 (citing Barrett Refining Corp. v. United States, 242 F.3d 1055, 1060 (Fed. Cir. 2001)).

In its opposition, Biltmore claims that it had an implied-in-fact contract with the Government because the Government is allowed to "relentlessly pursue[] winning auction bidders who defaulted to recover the amount of the winning bid." Pl. Br. 5. Biltmore argues that there must be a contractual relationship between Biltmore and the Government because the Government "treats the obligations of a winning bidder at its auctions as a contractually binding commitment." Id. Biltmore's argument fails for several reasons.

First, Biltmore was not the winning bidder in the auction, and, therefore, is not in the same type of relationship with the Government as the plaintiff in Punxsutawney Communications, 21 F.C.C. RCD 16260 (WTB 2007). Id.

Second, disappointed applicants in an FCC licensing procedure, like Biltmore, do not have an implied-in-fact contract with the Government because there is no mutuality of an intent to contract. Folden, 56 Fed. Cl. at 55, aff'd 379 F.3d 1344 (Fed.

Cir. 2004). In Folden, this Court found that there was no mutuality of an intent to contract where the lottery notices and the FCC regulations did not indicate an intent to be contractually bound and where the FCC's rules were subject to change. Id. at 53-54. Accordingly, Biltmore fails to establish that an implied-in-fact-contract with the Government exists, and judgment should be entered for the Government as a matter of law.

**CONCLUSION**

For the reasons stated above and in our motion, the United States respectfully requests this Court dismiss plaintiff's complaint for lack of subject matter jurisdiction, or, in the alternative, enter judgment as a matter of law for the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick by Patricia M.McCarthy
MARK A. MELNICK
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 305-3689
Fax. (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Grey Pash
Office of General Counsel
Federal Communications
Commission
445 12th Street, SW
Washington, D.C. 20554

October 12, 2007